JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Charles Imburgia ("Imburgia"), appeals his convictions and sexual predator status. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2005, Imburgia was charged with thirty-eight counts of rape, nineteen counts of gross sexual imposition, twenty counts of sexual battery, and twenty counts of unlawful sexual conduct with a minor. He pled guilty in January 2006, pursuant to a plea agreement, to three counts of rape and two counts of unlawful sexual conduct with a minor. At the plea hearing, the trial court informed him of postrelease control as follows:
 "The first count that you're being asked to plead to here today, is count twenty-eight, which is a charge of rape. That is [a] violation of [R.C.] 2907.02. * * *
 And also there is post-release control associated with that charge. That means, for up to five years after you're released from prison, you could be supervised by the adult parole authority. * * *
 Let me move on to count twenty-nine, and that's also a charge of rape, which is in violation of [R.C.] 2907.02. And also a felony of the first degree * * * with post-release control for up to five years. * * *
 The next count is count thirty, and that is also a charge of rape * * * with post-release control for up to five years upon your release from prison. * * *
 It's unlawful sexual conduct with a minor * * * also with the possibility of post-release control for up to, I think you said five years?
 Prosecutor: Yes, a mandatory five years, your Honor, on the second [sex] offense.
 The Court: A mandatory five years of post-release control as listed in the statute. * * * And also post-release control as previously described would be five years. * * *
 There is also post-release control for up to five years if a prison sentence is imposed with respect to [count seventy-nine]." * * *
 {¶ 3} Prior to sentencing, Imburgia moved to withdraw his guilty pleas. The court held a hearing on the matter and denied his motion. The court classified Imburgia as a sexual predator and sentenced him to a total of six years in prison.
 {¶ 4} Imburgia now appeals, raising three assignments of error.
 {¶ 5} In his first assignment of error, Imburgia argues that the trial court erred when it denied his motion to withdraw his guilty pleas because the pleas were not knowingly, intelligently, and voluntarily entered. Imburgia contends that the trial court failed to comply with Crim.R. 11 because it did not inform him that he was subject to five years of mandatory postrelease control.
 {¶ 6} Crim.R. 32.1 provides that a defendant may move to withdraw his guilty plea prior to sentencing. A defendant who so moves does not have an absolute right to have his guilty plea withdrawn. The trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. State v. Xie (1992),62 Ohio St.3d 521, 527, 584 N.E.2d 715. The decision to grant or deny the motion is within the trial court's discretion and will not be disturbed absent a finding of an abuse of discretion. Id.
 {¶ 7} Crim.R. 11(C)(2)(a) requires a trial court to inform a criminal defendant of the maximum penalty for the offense to which he is pleading guilty. The trial court must also provide the defendant information pertaining to postrelease control during the plea hearing. Watkins v.Collins, 111 Ohio St.3d 425, 2006-Ohio-5082, 857 N.E.2d 78, citingWoods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E.2d 1103. Crim.R. 11(C)(2)(a), however, does not involve the waiver of a constitutional right; therefore, courts have found that substantial compliance with this portion of the rule is sufficient. State v.Stewart (1977), 51 Ohio St.2d 86, 93, 364 N.E.2d 1163. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." State v. Nero (1990), 56 Ohio St.3d 106, 108,564 N.E.2d 474, citing Stewart, supra.
 {¶ 8} Imburgia cites our decision in State v. Holloway, Cuyahoga App. Nos. 86426 — 86427, 2006-Ohio-2591, to support his argument that the trial court did not comply with Crim.R. 11 in this case. InHolloway, supra, we vacated the defendant's guilty pleas because the trial court failed to advise him that he was subject to mandatory postrelease control but merely stated, "You may be released into a five-year postrelease control program." Subsequent to the filing of the appellant's brief in this case, however, the Ohio Supreme Court reversed our decision in State v. Holloway, 111 Ohio St.3d 496, 2006-Ohio-6114,857 N.E.2d 141. The Court held that Holloway "is reversed on the authority of Watkins v. Collins, 111 Ohio St.3d 425, 2006-Ohio-5082,857 N.E.2d 78."
 {¶ 9} In Watkins, twelve Ohio inmates filed an action seeking a writ of habeas corpus under R.C. 2725.04 to compel the Ohio Department of Rehabilitation and Correction to release them from prison. Each of the petitioners was incarcerated for having violated the terms of his postrelease control. The petitioners argued that the trial courts never properly imposed postrelease control because the language contained in their sentencing entries mistakenly included discretionary language concerning their terms of postrelease control. Because the trial courts misrepresented the mandatory nature of their postrelease control, the petitioners claimed that they could not be imprisoned for the violation.
 {¶ 10} The Supreme Court found that, although each of the petitioner's sentencing entries contained discretionary language, the entries were "sufficient to afford notice to a reasonable person that the courts were authorizing postrelease control as part of each petitioner's sentence. A reasonable person in the position of any of the petitioners would have had sufficient notice that postrelease control could be imposed following the expiration of the person's sentence." Id. at _51.
 {¶ 11} The Supreme Court further found that this holding is "consistent with the preeminent purpose of R.C. 2967.28 — that offenders subject to postrelease control know at sentencing that their liberty could continue to be restrained after serving their initial sentences." Id. at 4|52. The Supreme Court concluded, "the petitioners' sentencing entries, although they mistakenly included wording that suggested that imposition of postrelease control was discretionary, contained sufficient language to authorize the Adult Parole Authority to exercise postrelease control over the petitioners." Id. at ^[53.
 {¶ 12} The Supreme Court then reversed our decision inHolloway, based on Watkins. In Holloway, the defendant argued that the trial court failed to comply with Crim.R. 11 by failing to advise him during his plea hearing that he was subject to a mandatory term of postrelease control.[1] This court found that, because Holloway was not advised that his postrelease control would consist of a mandatory five years, the trial court inadvertently understated the sentence he would receive. "The imposition of a non mandatory post-release control constitutes a different sentence than when a mandatory post-release control is imposed." Holloway, supra at _18. This court concluded that "because Holloway was not informed of the maximum penalty he could receive if he entered his pleas, his pleas were not knowingly, intelligently, and voluntarily entered," and the pleas should be vacated.
 {¶ 13} Previously, this court vacated a defendant's guilty plea when the trial court failed to properly advise the defendant of postrelease control. Cf. State v. Griffin, Cuyahoga App. No. 83724, 2004-Ohio-4344;State v. Crosswhite, Cuyahoga App. Nos. 86345 and 86346, 2006-Ohio-1081;Holloway, supra.
 {¶ 14} Although Holloway was expressly overruled based onWatkins, the Supreme Court was careful to note that a "challenge to the propriety of the sentencing court's imposition of postrelease control" could still be raised on appeal. Watkins, supra at 4|51. Therefore, we must determine whether the trial court substantially complied with Crim.R. 11 in advising Imburgia of postrelease control.
 {¶ 15} We find that the instant case is distinguishable fromHolloway because the trial court specifically advised Imburgia at least once during the plea hearing of the mandatory nature and length of his postrelease control and several times that "there is postrelease control." In Holloway, the trial court merely informed Holloway that he "may" be subject to postrelease control.
 {¶ 16} We find that the trial court substantially complied with the mandates in Crim.R. 11 and that Imburgia entered a counseled plea with knowledge of the mandatory period of postrelease control. We also find that the trial court did not abuse its discretion in denying his motion to withdraw his guilty pleas. Therefore, the first assignment of error is overruled.
 {¶ 17} In the second assignment of error, Imburgia argues that he was denied effective assistance of counsel.
 {¶ 18} To prevail on an ineffective assistance of counsel claim, Imburgia must show that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; Hill v. Lockhart (1985),474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203.
 {¶ 19} Imburgia relies on State v. Lamb, 156 Ohio App.3d 128,2004-Ohio-474, 804 N.E.2d 1027, in which the appellate court found defense counsel ineffective because counsel had failed to object when the trial court did not notify the defendant during the plea hearing that he was subject to a mandatory term of postrelease control. The court found that the defendant was denied effective assistance because counsel failed to recognize error with respect to the period of postrelease control. Id.
 {¶ 20} In the instant case, trial counsel did not object to the form or substance of the plea hearing. Because we find, however, that Imburgia had adequate knowledge of the possible maximum sentence at the time he pled guilty and that the trial court substantially complied with Crim.R. 11, Imburgia has not shown how counsel's actions were deficient or that he would not have pled guilty had counsel acted differently.
 {¶ 21} Therefore, the second assignment of error is overruled.
 {¶ 22} In the third assignment of error, Imburgia argues that R.C.2950.09, the statute governing sexual predator classification, is unconstitutional based on the Ohio Supreme Court decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. At his sexual predator adjudication hearing, Imburgia raised a constitutional challenge to his designation as a sexual predator.
 {¶ 23} In Foster, supra, the Ohio Supreme Court concluded that portions of Ohio's felony sentencing statutes violate theSixth Amendment to the United States Constitution as set forth in Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, because those statutes require judicial fact-finding. The Court severed the offending statutes from Ohio's felony sentencing laws. SeeFoster at T|83.
 {¶ 24} Imburgia argues that, because R.C. 2950.09 requires a trial court to engage in judicial factfinding during a sexual predator classification hearing, the statute constitutes an increase in the penalty for his crimes beyond the prescribed statutory maximum. Therefore, based on Foster, he claims the statute is unconstitutional. We disagree.
 {¶ 25} The Ohio Supreme Court has held that R.C. Chapter 2950 is remedial and not punitive, and sexual predator adjudications are civil and not criminal in nature. State v. Cook, 83 Ohio St.3d 404, 423,1998-Ohio-291, 700 N.E.2d 570. Therefore, the sex offender registration requirements outlined in R.C. 2950.01 et seq. do not fall within the purview of Foster. See State v. Schmidt, Medina App. Nos. 03CA0080-M and 03CA0081-M, 2004-Ohio-1426; State v. Gunner, Medina App. No. 05CA0111-M,2006-Ohio-5808.
 {¶ 26} Imburgia argues that the General Assembly's intent for sexual predator classifications to be remedial in nature rather than punitive does not matter because community notification requirements have an actual punitive effect. Imburgia claims that those classified as sexual offenders often have their homes vandalized and are the victims of physical violence; therefore, the reprisals constitute penalties. Even if we assume that Imburgia's unsupported assertions are true, the courts have no control over public reaction and any reprisal by a citizen certainly cannot be considered a "penalty" which the court has imposed. As the Cook court noted, "the sting of public censure does not convert a remedial statute into a punitive one." Id. at 423, quotingDepartment of Revenue v. Kurth Ranch (1994), 511 U.S. 767, 777,114 S.Ct. 1937, 128 L.Ed.2d at 767.
 {¶ 27} Because sexual predator adjudications are civil, not criminal in nature, we find that Foster has no effect on Imburgia's classification as a sexual predator.
 {¶ 28} The third assignment of error is overruled.
Accordingly, judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The trial court informed Holloway that he may be subject to five years of postrelease control.
MARY EILEEN KILBANE, J. CONCURS; MELODY J. STEWART, J. CONCURS (WITH SEPARATE OPINION)